OPINION
{¶ 1} Plaintiff-appellant Cathleen Dew, Executor of the Estate of Betty J. Cavanaugh, Deceased appeals from the January 30, 2002, Decision and Entry of the Muskingum County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Betty J. Cavanaugh and appellee James Cavanaugh were divorced by virtue of a decree filed in the trial court on April 12, 1991. By agreement of the parties, the issues of spousal support and division of property were bifurcated. Those matters were addressed at a hearing which began on September 13, 1991, and was continued on November 20, 1991. The matter was taken under advisement and a Referee's Report, including findings of fact and conclusions of law, was filed on March 23, 1992. The Referee, in his report, recommended, in part, that Betty Cavanaugh be awarded the inventory of lock box 1078 at Central Trust[1], which had aggregate value of $48,972.25. The parties had stipulated that the same was marital property. As memorialized in a Judgment Entry filed on April 21, 1992, the trial court approved and adopted the Referee's Report.
 {¶ 3} Subsequently, a hearing before a Referee was held on December 9, 1992. Pursuant to a Referee's Report filed on January 20, 1993, the Referee made the following findings of fact:
 {¶ 4} "3) Pursuant to judgment entered in this matter on April 21, 1992, plaintiff was awarded the following items of property to which she has been prevented from receiving by defendant:
 {¶ 5} "Savings of American Accounts 77,620.75
 {¶ 6} "Prudential IRA Account 7,083.80
 {¶ 7} "Paine Webber Account 1,420.80
 {¶ 8} "Western Southern Policy 521.00
 {¶ 9} "Bank One (Central Trust) 42.05
 {¶ 10} "Crooksville Bank Proceeds 12,352.66
 {¶ 11} "American Investors 33,947.77
 {¶ 12} Total $132,988.83"
 {¶ 13} Based on the above findings, the Referee recommended that Betty Cavanaugh be awarded judgment against appellee in the amount of $132,988.83 plus interest at the statutory interest rate from April 21, 1992. A Judgment Entry approving and adopting the Referee's Report and a "Certificate of Judgment for Lien Upon Land and Tenements" were filed the same day. The judgment lien was refiled on January 5, 1998.
 {¶ 14} Thereafter, appellee, On March 19, 2001, filed a motion with the trial court. Appellee, in his motion, argued that since January 20, 1993, Betty Cavanaugh had received all of the assets which she was awarded and that, therefore, the judgment lien should be released since the same had been satisfied. Appellee further argued in his motion as follows:
 {¶ 15} "At the time of the divorce, Defendant owned and controlled lock box 1078 at Central Trust. It is believed that a successor bank now has this lock box. Defendant was awarded the lock box as part of the divorce settlement, but Plaintiff was awarded the contents of the lock box having an aggregate value of $48,972.25.
 {¶ 16} "A court hold was placed on lock box 1078 that has kept Defendant from access to that box for over ten years. Defendant claims that there are items of personal property that belong to him and were awarded to him as part of the divorce that were located within that lock box. Defendant requests that this court release any hold orders on the lock box and that Plaintiff be required to turn over any keys for the lock box to Defendant so that he can review the contents and determine if his property is still intact. If Defendant's property has been removed, then Defendant requests that Plaintiff be ordered to return said property to Defendant or to reimburse Defendant for the reasonable fair market value of said property."
 {¶ 17} A hearing before the trial court was held on April 30, 2001. As memorialized in a Decision and Entry filed on January 30, 2002, the trial court ordered that the amount of the judgment lien should be reduced to $29,988.00 due to payments received by Betty Cavanaugh from appellee in the past. The trial court also ordered that appellant, who is the Executor of Betty Cavanaugh's Estate[2], should receive an IRA, various securities and a coin collection from the lock box. Finally, the trial court, in its order, reduced the amount of interest owed to appellant from a figure over $150,000.00 to $18,307.96. The trial court, in so holding, specifically stated as follows:
 {¶ 18} "The Court finds that interest if calculated annually from April 1993 on the unpaid lien at 10% per annum inspite [sic] the credits would bring the total owed plaintiff's estate from defendant to a figure over $150,000.00. However, the Court determines that much of the assets could have been transferred at any time and would have reduced the interest significantly. This factor and the coin collection, value unknown, shall cause the total sum of $48,295.96. The principle after adjustment is $29,988.00. The Court only deems it fair to calculate interest at 10% per annum for the past five (5) years. This arbitrary decision is based on the fact that my predecessors could have and should have, in my opinion, transferred major assets to Betty Cavanaugh in years past as opposed to letting them just sit in a box or in an account. Interest at 10% per annum for five (5) years brings the total defendant owes the estate of Betty Cavanaugh to $48,295.96."
 {¶ 19} It is from the trial court's January 30, 2002, Decision and Entry that appellant now appeals, raising the following assignments of error:
 {¶ 20} "1. The decision of the trial court violated the due process rights of the defendant by addressing matters beyond the scope of the motion pending before the court.
 {¶ 21} "2. The decision of the trial court reducing the judgment and interest owed to the plaintiff-appellant was unsupported by, and contrary to, the weight of the evidence.
 {¶ 22} "3. The trial court erred by relitigating and modifying previous orders of the court in violation of the principle of res judicata.
 {¶ 23} "4. The decision of the trial court to assign values of $2500.00 to a coin collection and $19,000.00 to various bonds was unsupported by any evidence.
 {¶ 24} "5. The trial court erred by reducing interest owed to the plaintiff-appellant in violation of established case law and the requirements of the Ohio revised code applicable to statutory interest.
 {¶ 25} "6. The trial court abused its discretion by reducing the judgment and interest owed to the plaintiff-appellant.
 {¶ 26} "7. Assuming arguendo that the trial court was authorized to reduce the amount of interest owed to the plaintiff-appellant, the manner in which the trial court calculated the reduction was an abuse of discretion and was unsupported by the evidence."
 {¶ 27} For purposes of judicial economy, we shall address appellant's assignments of error out of sequence.
 I {¶ 28} Appellant, in her first assignment of error, argues that the trial court, by addressing matters beyond the scope of the motion pending before it, violated appellant's due process rights. Appellant specifically contends that, since appellee's March 19, 2001, motion only concerned the release of the judgment lien on appellee's property and the opening of the lock box, the trial court acted improperly by revising the ten year old award of interest "without so much as hearing any testimony [on] point."
 {¶ 29} Appellant is correct that appellee, in his March 19, 2001, motion, did not request a reduction of interest, but rather only requested the release of the lien and the opening of the lock box. However, we do not believe that the trial court, by considering the amount of interest due and payable to appellant from appellee, went beyond the scope of appellee's motion. In order to determine if the judgment against appellee had been paid in full and if the lien, therefore should be released, the trial court, as noted by appellant, appropriately considered evidence of payments made by appellee. Assuming, arguendo, that appellee had made payments to appellant since the judgment was entered, then the amount of the judgment would be affected as would the amount of interest due and owing. For such reason, we find that the trial court did not violate appellant's due process rights by considering the amount of interest due and owing.
 {¶ 30} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 31} Appellant, in her second assignment of error, challenges the trial court's decision reducing the judgment and interest owed to appellant. Appellant specifically argues that the trial court's decision was unsupported by, and contrary to, the manifest weight of the evidence.
 {¶ 32} As is stated above, a hearing before the trial court was held on April 30, 2001, on appellee's motion requesting the opening of the lock box and the release of the judgment lien. When an appellant claims that the trial court's judgment was against the weight of the evidence or unsupported by the evidence, the appellant must include in the record all portions of the proceedings during which such evidence may have been presented. See Hartt v. Munobe (1993), 67 Ohio St.3d 3, 7,1993-Ohio-177, 615 N.E.2d 617. App.R. 9(B) explicitly provides that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion." In the case sub judice, appellant has failed to supply this Court with a transcript of the proceedings before the trial court or, alternatively, a statement pursuant to App.R. 9(C) or (D). When portions of the transcript necessary to resolve the issues raised on appeal are not part of the record, the court must presume regularity in the proceedings below and affirm. Knappv. Edwards Laboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 354. Since appellant, in the case sub judice, has failed to provide this Court with the transcript of the April 30, 2001 hearing[3], we must presume the regularity of the proceedings below and affirm pursuant to the directive set forth in Knapp, supra.
 {¶ 33} Appellant's second assignment of error is, therefore, overruled.
 IV {¶ 34} Appellant, in her fourth assignment of error, argues that the trial court's decision assigning a value of $2,500.00 to the coin collection and $19,000.00 to various bonds which were awarded to appellant and used to offset the balance covered by appellee was unsupported by any evidence. According to appellant, "there was no evidence presented [at the April 30, 2002, hearing] regarding the value of said items and, by the admission of the Court [in its January 30, 2002, Decision], the value of the coin collection was `unknown.'"
 {¶ 35} Since there is no transcript of the April 30, 2001, hearing, for the reasons set forth above in our discussion of appellant's second assignment of error, appellant's fourth assignment of error is overruled.
 III, V, VI {¶ 36} Appellant, in her third assignment of error, maintains that the trial court violated the doctrine of res judicata by "relitigating and modifying" the previous judgment awarding Betty Cavanaugh statutory interest on the unpaid amount of $132,988.83, effective April 21, 1992. In her fifth assignment of error, appellant argues that the trial court erred by reducing the amount of interest owed to appellant in violation of R.C. 1343.03 and Ohio case law. Finally, appellant, in her sixth assignment of error, contends that the trial court's reduction of interest owed to appellant was arbitrary.
 {¶ 37} "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." Grava v. ParkmanTownship, 73 Ohio St.3d 379, 381, 1995-Ohio-331, 653 N.E.2d 226. (citations omitted). Furthermore, "[i]t has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit'." National Amusements, Inc. v.Springdale (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (citation omitted).
 {¶ 38} We concur with appellant that the trial court violated the doctrine of res judicata in reducing the amount of interest owed. In the case sub judice, Betty Cavanaugh originally was awarded interest on the amount of $132,998.83 at the statutory rate from April 21, 1992. Clearly, it was intended that interest would be paid by appellee until the judgment was paid in full. However, subsequently, the trial court, in its January 30, 2002, Decision and Judgment Entry, limited the amount of interest to 10% per annum for the past five years. By doing so, the trial court improperly modified its previous judgment with respect to interest.
 {¶ 39} Appellant further argues that the trial court improperly and arbitrarily reduced the amount of interest. It was undisputed that a lien existed against appellee in the amount of $132,988.83. The trial court, in its January 30, 2002, Decision and Entry, stated, in relevant part, as follows in explaining why it was reducing the amount of statutory interest owed to appellant from appellee on such amount:
 {¶ 40} ". . . The Court only deems it fair to calculate interest at 10% per annum for the past five (5) years. This arbitrary decision is based on the fact that my predecessors could have and should have, in my opinion, transferred major assets to Betty Cavanaugh in years past as opposed to letting them just sit in a box or in an account. Interest at 10% per annum for five (5) years brings the total defendant owes the estate of Betty Cavanaugh to $48,295.96."
 {¶ 41} R.C. 1343.03 sets forth guidelines for the awarding and calculation of statutory interest. Such section states, in relevant part, as follows:
 {¶ 42} "(A) In cases other than those provided for in sections1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.
 {¶ 43} "(B) Except as provided in divisions (C) and (D) of this section, interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct, including, but not limited to a civil action based on tortious conduct that has been settled by agreement of the parties, shall be computed from the date the judgment, decree, or order is rendered to the date on which the money is paid." R.C. 1343.03 has been applied to domestic relations matters involving the division of marital property. See Dutcher v. Dutcher (July 11, 1994), Morgan App. No. CA-9319.
 {¶ 44} While payment of the original judgment is pertinent to the calculation of postjudgment interest, it does not however totally eliminate an award of postjudgment interest. See Moore v. Jock (1993),90 Ohio App.3d 413, 417, 629 N.E.2d 508. Where partial payments are made on a judgment plus accumulated postjudgment interest, payments arefirst
applied to payment of interest and second to payment of principal. Viockv. Stowe-Woodward Co. (1989), 59 Ohio App.3d 3, 569 N.E.2d 1070. See alsoAugustine v. North Coast Limosine, Inc. (Aug. 10, 2000), Cuyahoga App. No. 76742, 76993.
 {¶ 45} In the case sub judice, it is clear that the trial court did not apply any payments that appellee made to appellant first to the payment of interest. Rather, the trial court, by its own admission arbitrarily, decided to "calculate interest" at 10% per annum for the past five (5) years." Since, therefore, the trial court's reduction of interest in this matter violated Ohio case and statutory law, violated the doctrine of res judicata, and by the trial court's own admission was "arbitrary", appellant's third, fifth and sixth assignments of error are sustained.
 VII {¶ 46} Appellant, in her seventh assignment of error, maintains that assuming, arguendo, that the trial court was authorized to reduce the amount of interest owed to appellant, the manner in which it calculated the reduction was an abuse of discretion and unsupported by the evidence.
 {¶ 47} Based on our disposition of appellant's fifth and sixth assignments of error, appellant's seventh assignment of error is moot.
 {¶ 48} Accordingly, based on the foregoing, the judgment of the Muskingum County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
By Edwards, J., Gwin, P.J. and Wise, J. concur.
In Re: DR — Interest owed on judgment.
[1] Central Trust is now known as Bank One.
[2] Betty Cavanaugh died June 26, 2001.
[3] A review of the appellate court docket reveals that while appellant, on his docket statement, indicated that a transcript was to be filed, the transcript was never filed with this court. In addition, there is no evidence in the file that appellant served the appropriate praecipe on the court reporter in order to obtain a copy of the transcript since there is no copy of such a praecipe in the file.